# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br><br><br> JUAN ROQUE-POLANCO, <br><br> Defendant. | CASE NO. 11cr5520 - IEG <br><br> **ORDER:** <br><br> **(1) GRANTING MOTION FOR RECONSIDERATION;** <br><br> [Doc. No. 20] <br><br> **(2) DENYING MOTION TO DISMISS THE INDICTMENT; AND** <br><br> [Doc. No. 8] <br><br> **(3) DENYING AS MOOT MOTION TO STRIKE** <br><br> [Doc. No. 25] |

    Presently before the Court is Defendant Juan Roque-Polanco's motion for reconsideration of the Court's prior order denying his motion to withdraw the indictment. [Doc. No. 20.] For the reasons below, the Court **GRANTS** the motion for reconsideration, but again denies Defendant's motion to dismiss the indictment.

///

///

///

///

# BACKGROUND

## I.     Facts Underlying Arrest[1]

Defendant was arrested on October 8, 2011, approximately ten miles east of the Tecate Port of Entry near Tecate, California.  Border Patrol agents found Defendant and two other individuals after encountering foot signs near the international border in a rural area, and then following those signs for approximately 50 minutes.  Defendant admitted he was a citizen of Mexico and did not have paperwork allowing him to enter the United States.

## II.    Defendant's Criminal History

Defendant first moved to the United States in 1982, at the age of 21. [Doc. No. 8-2, Declaration of Juan Roque-Polanco ("Roque-Polanco Decl.") ¶ 1.]  He married his wife, Sylvia Roque, in 2004, in Virginia, and remains married to her today. [Id. ¶ 2.]  Ms. Roque is a natural-born United States citizen. [Id.]

Defendant was convicted in Texas on June 10, 1988 of "unlawfully, intentionally, and knowingly deliver[sic] by actual transfer more than one-fourth ounce and less than four ounces of marijuana."  He received a two-year custodial sentence. [Doc. No. 9, Government's Exhibit 1, at 20-23.][2]  On May 6, 1992, also in Texas, defendant was convicted of burglary of a habitation with intent to commit theft. [Id. at 15-19.]  He received a five year custodial sentence. [Id.]

## III.   Defendant's Prior Removals

Defendant was first ordered removed pursuant to an expedited order of removal on July 31, 2011. [Doc. No. 8-2, Roque-Polanco Decl. ¶¶ 3-4.]  The removal was conducted in the area of Carrizo Springs, Texas, by Border Patrol Agent Fernando Martinez, Jr. [Id.; Doc. No. 12, Declaration of Border Patrol Agent Fernando Martinez, Jr. ("Agent Martinez Decl.") ¶ 2.]  Defendant was subsequently removed from the United States in the Campo area of San Diego County on August 13, 2011, again pursuant to an expedited order of removal. [Doc. No. 8-2,

---

[1] The statement of facts underlying Defendant's arrest is taken from the parties' briefs on Defendant's motion to dismiss the indictment.  Because these facts are not disputed for purposes of this motion, neither party has provided the Court with underlying evidence establishing these facts.

[2] The page numbers used with regard to the government's exhibits refer to the header inserted by CM/ECF in the top right corner of each page of the filing.

Roque-Polanco Decl. ¶¶ 3, 15.] This removal was performed by Border Patrol Agent Lawrence Smith. [Id.; Declaration of Border Patrol Agent Lawrence Smith ("Agent Smith Decl.") ¶ 1.]

**IV.    The Prior Proceedings in This Matter**

On December 27, 2011, Defendant filed a motion to dismiss the indictment under 8 U.S.C. § 1326(d), arguing the underlying expedited removal proceedings were fundamentally unfair. [Doc. No. 8.] In his motion, Defendant argued his due process rights were violated because he was denied the opportunity to consult with counsel and because the Border Patrol Agents failed to comply with agency regulations. [Doc. No. 8-1 at 6-11; Doc. No. 13 at 3-8.] Defendant also argued that he was prejudiced by these violations because he had a plausible claim for relief. [Doc. No. 8-1 at 14-15.]

On February 1, 2012, the Court ruled in part on Defendant's motion to dismiss the indictment. [Doc. No. 15.] The Court rejected Defendant's argument that the agent's failure to advise Defendant that he had a right to consult with an attorney violated the Fifth Amendment. [Id. at 4-5.] However, the Court held that the agents did violate Defendant's due process rights by failing to recognize that they had the discretion to permit Defendant to withdraw his application for admission and depart immediately in lieu of expedited removal. [Id. at 6.] The Court deferred its ruling on whether Defendant was prejudiced by the due process violations and sought further briefing from the parties on the issue. [Id. at 9.] The Court also held that Defendant's 1992 conviction for residential burglary constituted an aggravated felony, but Defendant's 1988 marijuana conviction was not an aggravated felony. [Id. at 7-9.]

On February 13, 2012, the Court held a hearing on the issue of prejudice. [Doc. No. 18.] At the hearing, the Court held that Defendant was not prejudiced by the due process violations and denied Defendant's motion to dismiss the indictment. [Doc. No. 19 at 21:16-22:22] The Court explained that Defendant had failed to make a plausible showing that the Attorney General would exercise his discretion in Defendant's favor based on the facts presented in this case. [Id. at 21:21-21:24.] The Court stated:

> As the Government points out, Congress has expressed a strong preference, and I know it's a different statute, 8 U.S.C. section 1228, and related regulations, that the aliens who are aggravated felons, and this is an aggravated felony, that they should not be admitted to the United States, and the strong policy, and strong policy is

- 3 -                                                                                    11cv5520

> reflected in the field manual and effectively advises that aggravated felons should not be permitted to withdraw their application for admission and voluntarily return to Mexico. And so I can't imagine that the agents would have ever considered whether to allow the Defendant to withdraw his application, I mean, his application for admission, knowing of the strong policy, and probably they've never done it before.

[Id. at 21:25-22:12.]

## DISCUSSION

### I. Motion for Reconsideration

Defendant moves for reconsideration of the Court's order denying his motion to dismiss the indictment. [Doc. No. 20.] Defendant argues that the Court clearly erred when the Court concluded Defendant suffered no prejudice based upon the Court's belief that the DHS Field Manual reflects Congress' strong policy that aggravated felons should not be admitted to the United States and effectively advises that aggravated felons should not be permitted to withdraw their applications. [Doc. No. 20-1 at 3-4.]

District courts have inherent authority to decide motions for reconsideration in criminal proceedings. United States v. Aguirre, 214 F.3d 1122, 1124 (9th Cir. 2000). The Ninth Circuit has explained that reconsideration of a prior order is appropriate if the district court committed "clear error." Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

The Court agrees with Defendant that the DHS field manual takes no position on an applicant's criminal history and makes no mention at all of aggravated felonies. Therefore, the Court committed clear error when it based its holding on the DHS Field Manual. Accordingly, the Court **GRANTS** Defendant's motion for reconsideration and reconsiders its prior ruling on Defendant's motion to dismiss the indictment. See Sch. Dist. No. 1J, 5 F.3d at 1263.

### II. Motion to Dismiss the Indictment

Expedited removals may serve as a predicate removal for a prosecution under 8 U.S.C. § 1326. United States v. Barajas-Alvarado, 655 F.3d 1077, 1086-87 (9th Cir. 2011). Under § 1326(d), a defendant may only attack the underlying deportation on the basis that the order was "fundamentally unfair." 8 U.S.C. § 1326(d). A deportation proceeding is fundamentally unfair if there were procedural errors which deprived the defendant of due process, and the defendant suffered prejudice. Barajas-Alvarado, 655 F.3d at 1088. The Court has previously held that the

agents violated Defendant's due process rights by failing to recognize that they had the discretion to grant Defendant relief in the form of withdrawal of application. [Doc. No. 15 at 6.] Defendant did not challenge this holding in his motion for reconsideration. Therefore, the only issue the Court must reconsider is whether Defendant suffered prejudice.

"An alien seeking to prove prejudice need not establish that he definitely would have received immigration relief, but only that he had 'plausible grounds' for receiving such relief. Where the relevant form of relief is discretionary, the alien must 'make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor.'" Barajas-Alvarado, 655 F.3d at 1089 (quoting United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998); United States v. Corrales-Beltran, 192 F.3d 1311, 1316 (9th Cir. 1999)). "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'" Id.

8 C.F.R. § 1235.4 provides that the Attorney General may exercise his or her discretion to permit "any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings . . . or expedited removal." According to the DHS Field Manual, the following six factors are to be considered in determining whether to grant withdrawal of application for admission:

> (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations.

Barajas-Alvarado, 655 F.3d at 1090. Upon review, factors 1-3 and 5-6 are relatively neutral. Defendant's immigration violation was not particularly serious – this was the first and second times defendant had been removed. Defendant lived continuously in the United States since 1982, and was married to a United States citizen. It appears from the removal documents that defendant left the United States to go to Mexico in April of 2011 to attend his grandfather's funeral. [Doc. No. 8-2, Defendant's Exhibit C at 7.] Defendant was initially found inadmissible at the July 31, 2011 expedited removal. Also, there is nothing in the record showing that Defendant intended to violate the law. He did not present false documents and readily admitted, upon his apprehension, that he did not have the appropriate permission to be in the United States. Defendant's health and age do not require he remain in the United States, and there are no particular humanitarian or

1 public interest concerns that would militate in favor of or against relief.

2 Thus, the fourth factor, defendant's ability to easily overcome the ground of inadmissibility, is paramount. As an initial matter, the Court first addresses Defendant's argument that his prior criminal history is not a factor to be given any weight in determining whether an alien is entitled to withdraw of application. In making this argument, Defendant primarily relies on the Ninth Circuit case, United States v. Barajas-Alvarado. [Doc. No. 20-1 at 4, 7.] However, Bajaras-Alvarado did not hold that an applicant's criminal history is not a factor to be considered in determining whether an applicant should be granted withdrawal of application. Bajaras-Alvarado merely held that the seriousness of an applicant's criminal history was not a factor, and, therefore, should be given little weight, particularly in light of the fact that the applicant in that case had used fraudulent documents. 655 F.3d at 1091. Although the Court agrees that a Defendant's criminal history is not an express factor contained in the DHS field manual, a Defendant's criminal history can clearly be relevant to factor 4, the defendant's ability to easily overcome the grounds of inadmissibility. For example in this case, Defendant's 1992 conviction for residential burglary with intent to commit theft is not only an aggravated felony; it is a crime involving moral turpitude that renders Defendant inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I). See Cuevas-Gaspar v. Gonzales, 430 F.3d 1013, 1020 (9th Cir. 2005) ("unlawfully entering a residence with intent to commit theft or larceny therein is . . . a crime involving moral turpitude"). Defendant's 1992 conviction is a ground for inadmissibility, and Defendant must show under factor 4 that he can easily overcome this ground. Therefore, Defendant's 1992 conviction is clearly relevant to the determination of whether it is plausible Defendant would have been granted withdrawal of application.

Defendant argues that he is able to overcome his ground of inadmissibility because he is statutorily eligible for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h). [Doc No. 17 at 5-8; Doc. No. 20-1 at 5-6, 7.] Under 8 U.S.C. § 1182(h), the Attorney General may, in his discretion waive the inadmissibility of an applicant for admission if:

> (1) (A) in the case of any immigrant it is established to the satisfaction of the Attorney General that–
>
> (i) the alien is inadmissible only under subparagraph (D)(i) or (D)(ii)

1
2
>of such subsection or the activities for which the alien is inadmissible occurred more than 15 years before the date of the alien's application for a visa, admission, or adjustment of status, and

3
4
>(ii) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States,

5
>(iii) the alien has been rehabilitated; or

6
7
8
9
>(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; or

10
>(C) the alien is a VAWA self-petitioner; and

11
12
>(2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

13 Defendant argues that he is statutorily eligible for a waiver under section 1182(h)(1)(A) because

14 his conviction is over fifteen years old, there is no evidence his admittance would be contrary to

15 the national welfare, safety or security of the United States, and he has been rehabilitated. [Doc.

16 No. 17 at 5-6.] Defendant also argues that he is statutorily eligible for a waiver under section

17 1182(h)(1)(B) because his wife is a U.S. citizen, and the denial of his admission would cause her

18 "extreme hardship." [Id. at 7-8.] Defendant has presented the Court with a declaration from his

19 wife describing the hardships she would suffer. [Doc. No. 17-1, Declaration of Sylvia Roque

20 ("Sylvia Roque Decl.").]

21        Even if the Court were to accept and agree with Defendant's arguments, these arguments

22 by themselves are insufficient to show eligibility for an 1182(h) waiver. Defendant only explains

23 how he satisfies the requirements of 1182(h)(1). For an alien to receive an 1182(h) waiver, he

24 must not only show that he satisfies the requirements of one of the three 1182(h)(1) provisions, the

25 Attorney General must also favorably exercise his discretion pursuant to 1182(h)(2). See 8 U.S.C.

26 § 1182(h); Mejia v. Gonzales, 499 F.3d 991, 995 (9th Cir. 2007). 8 C.F.R. § 1212.7(h) provides:

27
28
>The Attorney General, in general, will not favorably exercise discretion under [8 U.S.C. § 1182(h)(2)] to consent to an application [for] admission to the United States, or adjustment of status, with respect to immigrant aliens who are inadmissible under [8 U.S.C. § 1182(a)(2)] in cases involving violent or dangerous

> crimes, except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of the application for adjustment of status or an immigrant visa or admission as an immigrant would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under [8 U.S.C. § 1182(h)(2))].

Accord. 8 C.F.R. § 212.7(d). Defendant's 1992 conviction for residential burglary is a violent and dangerous crime. See United States v. Becker, 919 F.2d 568, 573 (9th Cir. 1990) (holding that residential burglary with intent to commit theft is a crime of violence under 18 U.S.C. § 16(b)); Lopez-Cardona v. Holder, 662 F.3d 1110, 1112 (9th Cir. 2011) (holding same in the immigration context). Defendant has not presented the Court with any evidence showing that there are national security or foreign policy considerations that would weigh in favor of him being granted an 1182(h) waiver. In addition, Defendant's declaration from his wife states that she is in poor health and that she needs her husband for economic and emotional support. While it is unfortunate that Defendant's wife will suffer hardship, these factors are insufficient to establish "extreme hardship," let alone "exceptional and extremely unusual hardship." See United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998) ("The allegation that the wife suffers from poor health and would have difficulty working in Mexico, if true, would constitute hardship to a wife and her children, but we cannot say, as a matter of law, that these hardships would be extreme and beyond the common results of the deportation of a convict. Indeed, [defendant] describes the typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States."). Therefore, Defendant has failed to show that he would be able to obtain an 1182(h) waiver in light of 8 C.F.R. § 1212.7(h).

In addition, even if Defendant could show that he is statutorily eligible for an 1182(h) waiver, a mere showing of statutory eligibility for one of the 1182(h) waivers is insufficient by itself to establish prejudice in this case. For factor 4 to weigh in favor of granting Defendant withdrawal of application, Defendant must show that he can easily overcome his ground of inadmissibility, i.e., that he can easily obtain an 1182(h) waiver. Moreover, Defendant must not only show that it is "possible" he could obtain relief, but that it is "plausible." See Barajas-Alvarado, 655 F.3d at 1089. 8 C.F.R. § 1212.7(d) creates a high bar for obtaining an 1182(h)

1  waiver for an alien like Defendant that has been convicted of a violent or dangerous crime.
2  Therefore, Defendant could not have easily obtained the waiver, and factor four of the DHS
3  manual weighs against a finding of prejudice.

4  The Court acknowledges that Defendant has presented the Court with a Ninth Circuit case
5  where the court found it plausible that an alien convicted of an aggravated felony could obtain an
6  1182(h) waiver, see United States v. Arrieta, 224 F.3d 1076 (9th Cir. 2000), and an Administrative
7  Appeal Office decision where an alien that had been convicted of residential burglary was able to
8  obtain an 1182(h) waiver. See In re [Name Redacted], 2006 WL 5913573 (Administrative
9  Appeals Office, Sept. 29, 2006). However, the Court does not find these two cases persuasive.
10 First, Arrieta was decided in 2000, three years before the Attorney General promulgated 8 C.F.R. §
11 1212.7(d). See Mejia, 499 F.3d at 995 (stating that 8 C.F.R. § 212.7(d)[3] was adopted by the
12 Attorney General in 2003). Second, In re [Name Redacted] contains no analysis of whether the
13 alien could obtain a waiver under 1182(h)(2) in light of 8 C.F.R. § 1212.7(d). See generally In re
14 [Name Redacted], 2006 WL 5913573.

15 In sum, based on the facts presented, Defendant would not have been able to show that he
16 could easily overcome his grounds of inadmissibility by obtaining an 1182(h) waiver, and, thus, it
17 is not plausible that a border patrol agent would have granted him relief in the form of withdrawal
18 of application. Accordingly, Defendant was not prejudiced by any due process violations that may
19 have occurred during his expedited removal proceedings, and the Court again **DENIES**
20 Defendant's motion to dismiss the indictment.

21 **III.    Motion to Strike**

22 On April 11, 2012, after the Court's hearing on Defendant's motion for reconsideration, the
23 Government filed the second supplemental declaration of Border Patrol Agent Lawrence Smith.
24 [Doc. No. 23.] In response, Defendant filed a motion to strike the declaration. [Doc. No. 25.] In
25 ruling on Defendant's motion for reconsideration and Defendant's motion to dismiss the

---

[3] In Mejia, the Ninth Circuit noted that the regulation appears at both 8 C.F.R. § 1212.7(d) and 8 C.F.R. § 212.7(d), and the Ninth Circuit in that case chose to refer to the regulation as section 212.7(d). 499 F.3d at 994 n.4. In this case, the Court will refer to the regulation as section 1212.7(d) because that is how the parties referred to the regulation in their briefing.

1  indictment, the Court did not consider Agent Smith's second supplemental declaration.
2  Accordingly, the Court **DENIES** as moot Defendant's motion to strike the declaration.

### CONCLUSION

For the reasons explained herein, the Court:

1. **GRANTS** Defendant's motion for reconsideration;
2. **DENIES** Defendant's motion to dismiss the indictment; and
3. **DENIES** as moot Defendant's motion to strike.

**IT IS SO ORDERED.**

**DATED:** April 18, 2012

*Irma E. Gonzalez*

**IRMA E. GONZALEZ**
**United States District Judge**